UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DANIEL SKIDMORE,**

      **Plaintiff,**          **CASE NO. 12-10202**

vs.

                          **DISTRICT JUDGE JULIAN ABELE COOK**

**EQUIFAX INC., et al.,**         **MAGISTRATE JUDGE MONA K. MAJZOUB**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Defendant CitiMortgage, Inc.'s motion to enforce settlement (docket no. 43) be **DENIED**.

**II.    REPORT:**

This matter comes before the Court on Defendant CitiMortgage, Inc.'s ("CMI") motion to enforce settlement. (Docket no. 43). Plaintiff filed a response. (Docket no. 46). Defendant CMI filed a reply. (Docket no. 48). The motion has been referred to the undersigned for determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Docket no. 44). Because this motion involves the potential settlement of Plaintiff's claims against Defendant CMI, the Court must proceed by Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court dispenses with oral argument on the motion pursuant to E.D. Mich. LR 7.1(f). This matter is now ready for ruling.

**A.    Facts and Procedural History**

Plaintiff Daniel Skidmore filed this *pro se* complaint on January 17, 2012, alleging that Defendant Equifax, Inc. failed to correct an inaccurate score on his credit report in violation of

1

federal and state law. Plaintiff subsequently amended his complaint to include various claims against Defendant CMI, its counsel, Robert Hugh Ellis, Dykema Gossett, PLLC, and Equifax Information Services, LLC for willful and negligent violations of the Fair Credit Reporting Act, breach of contract, fraud and misrepresentation, intentional infliction of emotional distress, and unjust enrichment. (Docket no. 9). He later filed a second amended complaint which added a claim of conspiracy to commit fraud and provided additional facts to support his claims. (Docket nos. 33, 40). Defendant CMI filed an answer and affirmative defenses to the second amended complaint. (Docket no. 37). Defendants Equifax Information Services, LLC and Equifax, Inc. have been dismissed from this action. (Docket no. 29).

On June 6, 2013, this case was referred to the undersigned for a settlement conference. (Docket nos. 38, 39). The parties submitted settlement statements and appeared for the conference on July 9, 2013. The case did not settle. On July 18, 2013, just nine days after the settlement conference, Defendant CMI filed the instant motion to enforce settlement. (Docket no. 43).

Defendant CMI argues that Plaintiff agreed to all material terms of a settlement in writing and moves for an order compelling Plaintiff to comply with the settlement agreement. Defendant contends that counsel for CMI sent Plaintiff an email on November 1, 2012 informing Plaintiff that he was authorized to offer $12,000 in exchange for a dismissal of CMI with prejudice. Defendant CMI also agreed to (1) ensure that the credit reporting on the subject CMI account is reported "paid as agreed," and (2) provide an official letter on CMI letterhead stating how the account should be reported with attached AUD. Plaintiff replied in email correspondence stating "I accept this offer contingent upon a final agreed upon writing.... Please provide me with the proposed agreement,

2

letter and AUD and I will review.[1] (Docket no. 42, ex. A).

Several weeks later Defendant CMI provided Plaintiff with a draft settlement agreement. (Docket no. 42, ex. B). In email correspondence dated November 25, 2012, Plaintiff notified Defendant CMI that although the settlement agreement "looks fine," he would need to see the UDF, also referred to as the AUD, and the letter to be provided by CMI to ensure that the documents stated that the account was closed and did not report a deed in lieu of foreclosure. (Docket no. 42, ex. C). Defendant CMI provided Plaintiff with the requested documents. When Plaintiff was unable to decipher the codes and information contained within the UDF he asked Defendant for a definition of terms. (Docket no. 42, ex. D, E).

Over the next several months the parties continued to exchange email correspondence in an effort to clarify the information contained in the UDF to Plaintiff's satisfaction. (Docket no. 42, ex. F-L). Defendant also contends that the parties discussed the impending settlement with the Court in a March 28, 2013 status conference. Defendant contends that it provided Plaintiff with a revised affidavit on May 13, 2013 that fully defined the terms in the UDF and addressed Plaintiff's concerns. Nevertheless, Plaintiff still refuses to settle. Consequently, Defendant filed the instant motion asking for an order enforcing the settlement agreement on the grounds that the parties agreed on all material terms of the settlement. Plaintiff opposes the motion.

**B.     Standard**

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Bamerilease Capital Corp. v. Nearburg,* 958 F.2d

---

[1] Defendant CMI states that an "AUD" is a form that summarizes credit reporting information supplied by a furnisher of information, like CMI, to a consumer reporting agency, like Transunion, Experian, or Equifax.

150, 152 (6th Cir. 1992) (citation omitted). The court's power to enforce settlement agreements extends to those cases where "the parties' agreements are not in writing and even to those settlement agreements made off the record, not in the presence of the court." *Henley v. Cuyahoga Cnty. Bd. of Mental Retardation and Developmental Disabilities,* 141 Fed. Appx. 437, 442 (6th Cir. 2005) (citations omitted). "This inherent power derives from the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Id*.

The court looks to state substantive law governing contracts to determine whether a settlement agreement is a valid contract between the parties. *Bamerilease Capital Corp.,* 958 F.2d at 152. Under Michigan law, there must be a meeting of the minds, or mutual assent, on all the material terms of the contract before an enforceable contract is formed. *Kamalnath v. Mercy Mem'l Hosp. Corp.,* 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* (citations omitted). In making the determination of whether a meeting of the minds occurred, "[t]he court considers the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent." *Barber v. SMH (US), Inc.,* 509 N.W.2d 791, 794 (Mich. Ct. App. 1993). "Mere discussions and negotiation, including unaccepted offers, cannot be a substitute for the formal requirements of a contract. *Kamalnath*, 487 N.W.2d at 503 (citation omitted).

**C.    Analysis**

The undersigned conducted a settlement conference in this case on July 9, 2013. At the settlement conference Defendant CMI brought to the Court's attention the identical issues it now raises in the instant motion to enforce settlement. Defendant CMI does not allege that the parties

engaged in any communications in the nine days that lapsed between the settlement conference and the time Defendant filed the instant motion. Defendant also does not argue that the parties agreed on any material terms since the filing of the motion. During the settlement conference the undersigned concluded that there was no meeting of the minds between Plaintiff and Defendant CMI and no valid settlement. The undersigned recorded this result on the court docket and communicated it without ambiguity or equivocation to the parties and to the district judge. Defendant CMI's motion and the timing of the motion are both inexplicable and perplexing. The motion is without merit and should be denied.

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response

proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: February 10, 2014       s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Daniel Skidmore and Counsel of Record on this date.

Dated: February 10, 2014       s/ Lisa C. Bartlett
                               Case Manager