UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SKIDMORE,

        Plaintiff,

v.

                                      Case No. 12-10202
                                      Honorable Julian Abele Cook, Jr.

CITIMORTGAGE, INC., et al.

        Defendants.

ORDER

In this case, the Plaintiff, Daniel Skidmore, alleges that the Defendants, CitiMortgage, Inc., Dykema Gossett, PLLC, and Robert Hugh Ellis, violated several federal and state laws during those negotiations in which he attempted to repair his credit score. On July 18, 2013, CitiMortgage filed a motion to enforce a settlement. This matter was referred to Magistrate Judge Mona K. Majzoub for her review. On February 10, 2014, Magistrate Judge Majzoub filed a report, in which she recommended that the Court reject the then-pending motion. CitiMortgage has filed its objections.

I.

This is the second lawsuit by Skidmore against CitiMortgage. In the prior lawsuit, Skidmore alleged that CitiMortgage had incorrectly reported that he was delinquent in making his mortgage payments. According to Skidmore, this negative report caused his credit score to drop substantially. However, this dispute was ultimately resolved when CitiMortgage agreed to instruct credit reporting agencies to remove this negative information from Skidmore's credit report.

Although two credit reporting agencies did remove the challenged information from Skidmore's credit report, a third agency delayed its update, claiming that it never received the corrected reporting data from CitiMortgage. In an attempt to expedite this process, Skidmore

contacted CitiMortgage to determine if this credit reporting agency had been issued the appropriate instructions. However, when the matter could not be resolved informally, Skidmore initiated this lawsuit, in which he alleged, *inter alia*, that CitiMortgage had violated its prior settlement agreement by failing to instruct all credit reporting agencies to repair his credit rating.

On November 1, 2012, CitiMortgage sent the following email message to Skidmore:

> I am authorized to offer $12,000 in exchange for a dismissal of CitiMortgage with prejudice. In addition to the monetary amount, my client agrees (1) to ensure that the credit reporting on the subject [CitiMortgage] account is reported 'paid as agreed' and (2) to provide an official letter on CMI letterhead stating how the account should be reported with attached AUD.[1] This offer is contingent upon verification that [a co-defendant] has been dismissed with prejudice.

Def. Mot. Enforce Settlement, Ex. A, ECF No. 43. Skidmore replied to the email with the following written statements: "I accept this offer contingent upon a final agreed upon writing. I am glad that we were able to agree to get this resolved in avoidance of further costs. Please provide me with the proposed settlement, letter and AUD and I will review." *Id.*

On November 20, 2012, CitiMortgage sent a draft settlement and proposed language for the letter. *Id.*, Ex. B. After reviewing the documents, Skidmore replied with the following email:

> The settlement agreement itself looks fine, but I need to see the UDF[2] that i [sic] am agreeing to (to confirm no negative reporting) and the letter must specify that the account was closed and there is to be no reporting of a deed in leiu [sic]. With those changes, I am prepared to agree on the terms proposed.

*Id.*, Ex. C.

---

[1] An AUD is the form that summarizes credit reporting information supplied by a furnisher of information, like CitiMortgage, to a consumer reporting agency.

[2] For the purposes of this motion, the terms AUD and UDF are interchangeable.

However, no written agreement was ever finalized and the parties continued to differ on whether an agreement had been reached. On January 13, 2013, following another email message from CitiMortgage, Skidmore wrote,

> There is NO agreement until I am satisfied with the agreement and execute a written copy. THAT was the agreement. There was absolutely NO "meeting of the minds" that you guys could put anything on the letter/UDF/agreement you liked, which was why I expressly stated in my e-mail that our agreement was subject to a final written agreement.

*Id.*, Ex. E.

On March 18, 2013, CitiMortgage's counsel informed Skidmore that he had sent a settlement agreement to him, noting that it "outlines [CitiMortgage's] offer to settle, which you previously accepted." *Id.* at Ex. G. Approximately one month later, Skidmore wrote: "[T]here is no agreement on settlement, as you are aware." *Id.*, Ex. J.

In May 2013, the parties exchanged another pair of email messages in which they differed once again as to whether the November email messages constituted a final agreement. *Id.*, Ex. J. Unable to agree on either the content of the AUD or whether a final agreement had been reached, the parties met for a settlement conference before Magistrate Judge Majzoub on July 9, 2013. Their efforts failed, in that the parties failed to reach an accord over their differences at this conference. Soon thereafter, CitiMortgage filed the instant motion to enforce a settlement of their dispute. Although Magistrate Judge had recommended that this Court deny the motion, CitiMortgage timely filed its objections.

## II.

A district court is authorized to conduct a de novo review of any objections to the report and recommendation of a Magistrate Judge on a dispositive motion. 28 U.S.C. § 636; Fed. R. Civ. P.

72(b)(3). Although a motion to enforce settlement is not one of the dispositive motions listed in § 636(b)(1)(A), the resolution of this motion could resolve the case. Under these circumstances, the Court will conduct a de novo review.

"'It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (quoting *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988)). This power pertains equally to agreements that have not been reduced to writing or were made off the record. *Henley v. Cuyahoga Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 442 (6th Cir. 2005). A settlement agreement is governed by the principles of contract law. *Bamerilease*, 958 F.2d at 152. In order to determine whether a valid contract was formed between the parties, the Court must look to the contract law of the state. *Id.*

"The goal of contract interpretation is to first determine, and then enforce, the intent of the parties based on the plain language of the agreement." *Harbor Park Mkt., Inc. v. Gronda,*, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007). Under Michigan law, "a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006). In order to form a contract, there must be an offer and acceptance. *Id.* "Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Id.* "[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *In re Costs & Attorney Fees*, 645 N.W.2d 697, 703 (Mich. Ct. App. 2002). "Whether an offer has been accepted and a contract formed involves a factual determination." *Id.*

III.

CitiMortage contends that the Magistrate Judge erroneously concluded that there was no meeting of the minds between the parties concerning the settlement. In essence, CitiMortgage challenges the Magistrate Judge's determination that a settlement agreement was never reached by the parties.

The purported agreement cited by CitiMortgage was allegedly formed during the exchange of email messages that took place between the parties in November 2012. On November 1, 2012, CitiMortgage emailed Skidmore with the following proposed settlement: Skidmore would dismiss its claims against CitiMortgage with prejudice, and in return CitiMortgage would (1) pay Skidmore $12,000; (2) ensure that Skidmore's account was reported "paid as agreed"; (3) provide an official letter on its letterhead with instructions as to how the account should be reported and an attached AUD form.

CitiMortgage contends that a contract was formed when Skidmore replied with the following email: "I accept this offer contingent upon a final agreed upon writing. I am glad that we were able to agree to get this resolved in avoidance of further costs. Please provide me with the proposed settlement, letter and AUD and I will review." Skidmore, on the other hand, maintains that no final agreement was ever reached between the parties because: (1) his acceptance included a condition precedent that was never fulfilled; (2) even if a final agreement was reached, he is not bound by it because CitiMortgage breached its material terms.

CitiMortgage first objects to the Magistrate Judge's recommendation on the ground that she failed to understand that its current motion relates to a purported agreement that was formed over email messages prior to the commencement of the settlement conference. This argument must be

rejected. In her report, the Magistrate Judge clearly noted that CitiMortgage contends that Skidmore agreed to its settlement terms "in writing." She explicitly discussed the November 1st email proposal and the subsequent email correspondence between the parties. In reaching her decision that no agreement was reached, she noted that during the settlement conference, CitiMortgage "brought to the Court's attention the identical issues it now raises in the instant motion to enforce settlement." Thus, it is clear that in making her recommendation to this Court, the Magistrate Judge considered and rejected CitiMortgage's contention that an agreement had been reached by email messages in November 2012. Notwithstanding the Magistrate Judge's conclusion, this Court is required to conduct a de novo review of the motion.

As an initial matter, Skidmore's email message clearly constitutes an acceptance of CitiMortgage's proposal. The parties dispute, however, whether Skidmore's inclusion of the phrase "contingent upon a final agreed upon writing" created a condition precedent to the formation of an enforceable contract. Citing *Mikonczyk v. Detroit Newspapers, Inc.*, 605 N.W.2d 360 (1999), CitiMortgage contends that, under Michigan law, the requirement that an agreement be memorialized in writing cannot constitute a condition precedent.

A condition precedent "is a fact or event that the parties intend must take place before there is a right to performance." *Harbor Park Mkt., Inc. v. Gronda*, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007). "'Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract.'" *MacDonald v. Perry*, 70 N.W.2d 721, 725 (Mich. 1955) (quoting *Knox v. Knox*, 59 N.W.2d 108 (Mich. 1953)). "[U]nless the contract language itself makes clear that the

6

parties intended a term to be a condition precedent, this Court will not read such a requirement into the contract." *Real Estate One v. Heller*, 724 N.W.2d 738, 741 (Mich. Ct. App. 2006).

In *Mikonczyk v. Detroit Newspapers, Inc.*, the court determined that a final settlement agreement was reached because (1) the parties put the settlement on the record; (2) the parties agreed to a monetary sum of $48,000; (3) "the plaintiff testified that he agreed to the terms of the agreement and acknowledged that it was a full, final, and complete settlement"; and (4) "the [trial] court accepted the agreement and requested counsel to reduce the agreement to writing." 605 N.W.2d at 361-62. When the parties failed to agree on the terms of the written memorial, the court held simply that "the 'subject to the satisfaction of each party' language was not a condition precedent because it was not intended to limit either parties' performance under the contract." *Id.* at 362. Thus, the *Mikonczyk* court did not hold that a party could never create a condition precedent upon the approval of a final writing. Rather, it analyzed the intent of the parties in that case and determined that they did not intend to create a condition precedent.

*Mikonczyk* is inapposite to this case. Here, Skidmore clearly intended to create a condition precedent. As part of its initial offer of settlement, CitiMortgage asserted that its offer "is contingent upon verification that [a co-defendant] has been dismissed with prejudice." Skidmore mirrored this language when he stated that his acceptance "is contingent upon a final agreed upon writing." An objective reading of this language indicates that Skidmore added a condition to his acceptance. Moreover, Skidmore never testified that this was "a full, final, and complete settlement." In the same sentence in which he agreed to CitiMortgage's offer, he required a review of the proposed

7

"writing."[3] After the initial email exchange, Skidmore never acted as though a final agreement had been reached.

In *Mikonczyk*, the primary point of contention appeared to be the dollar sum of the settlement, that had been agreed upon by the parties. By contrast, in this case, Skidmore clearly had reasons to require his review and approval of the letter and AUD. The primary remedy that Skidmore has been seeking in this case is the assurance that his credit has been repaired. The content of the letter and the form was obviously important to him. The essence of Skidmore's claim is that CitiMortgage failed to properly instruct credit rating agencies to correct the damage to his credit rating score. According to Skidmore's complaint, the relationship between the parties is full of misunderstandings; accusations of backpedaling, feet dragging, or insincerity, as well as the failure to follow through on obligations. Indeed, the settlement reached by the parties in the prior action included the submission of an AUD. Pl. Response to Def. Objections 22. The purported failure of that settlement led to the claims against CitiMortgage in this lawsuit.

Given Skidmore's express language and the surrounding circumstances, including the nature of the dispute and the remedy sought by Skidmore, the Court finds that Skidmore clearly intended his assent to be conditioned upon approval of the agreement, letter, and AUD. At no time afterward did the parties come to an agreement on the language of these documents.

The Court also notes that the settlement agreement which CitiMortgage sent to Skidmore contained a materially different term than that discussed in the email exchange. In its email,

---

[3] While CitiMortgage appears to interpret the word "writing" to mean only the actual settlement agreement, the word "writing" in this context must also incorporate the content of the letter and the AUD. *See Culver v. Castro*, 338 N.W.2d 232, 234 (Mich. Ct. App. 1983) ("[W]here one writing refers to another the two writings are to be construed together.").

CitiMortgage offered as one of the terms of the agreement that it would "ensure" that Skidmore's credit reporting is reported "paid as agreed." However, in its proposed settlement agreement, CitiMortgage offered to "request" a change and noted that it "has no control over the [credit agency] and is not liable for whether, when, how and/or if the [credit agency] . . . report[s] any transmitted information, changes, or deletions." In fact, CitiMortgage expressly asserted that it "can only request, but cannot guarantee, that the tradeline will be changed as requested." Def. Mot. to Enforce Settlement, Ex. B, at 2. Unquestionably, this constitutes a material difference in the terms that were discussed in the email exchange. However, given that the parties failed to reach an agreement on the content of the agreement, the Court need not determine the effect of this change on the formation of a contract.

IV.

For the reasons that have been set forth above, the Court adopts the recommendation of Magistrate Judge Majzoub and denies CitiMortgage's motion to enforce settlement (ECF No. 43).

IT IS SO ORDERED.

Date: March 31, 2014                                           s/Julian Abele Cook, Jr.
                                                               JULIAN ABELE COOK, JR.
                                                               U.S. District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2014

                                                               s/ Kay Doaks
                                                               Case Manager